# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SCOTT MICHAEL WHITT,<br><br>Plaintiff,<br><br>v.<br><br>RICHLAND HOLDINGS, INC. d/b/a ACCTCORP OF SOUTHERN NEVADA; RC WILLEY FINANCIAL SERVICES; and RANDALL CORPORATION d/b/a BOWEN LAW OFFICES,<br><br>Defendants. | Case No. 2:17-cv-00014-APG-NJK<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 48) |

Plaintiff Scott Whitt sues defendants Richland Holdings, Inc. d/b/a AcctCorp of Southern Nevada (AcctCorp), RC Willey Financial Services (RCW), and the Randall Corporation d/b/a Bowen Law Offices (Bowen Law)[1] for alleged actions arising from the collection of a debt. Whitt's amended complaint claims that AcctCorp and Bowen Law are liable for violations of the Fair Debt Collection Practices Act (FDCPA) and abuse of process, and that all defendants are liable under the Nevada Deceptive Trade Practices Act (NDTPA) and for civil conspiracy.

AcctCorp and RCW move for summary judgment on all of the claims. They argue that claim preclusion bars Whitt's claims, I have no jurisdiction under the *Rooker-Feldman* doctrine, Whitt has no standing to pursue his state law claims, the FDCPA claims and abuse of process claims are time-barred, and all claims fail on their merits.

---

[1] Jerome R. Bowen, Esq., in his individual capacity, was originally named in Whitt's complaint and amended complaint. He never filed an answer or responsive pleading to either. On April 19, 2018, I granted a stipulation between AcctCorp, RCW, and Whitt to amend the case's caption and change Jerome Bowen to "Randall Corporation d/b/a/ Bowen Law Offices" because Whitt's counsel improperly named Bowen in his individual capacity. However, Whitt has not filed a proof of serve for Bowen Law, and there is no indication in the record that Bowen accepted service on the corporation's behalf. Bowen Law has also not appeared in this action.

Whitt abandons his NDTPA claim, so I award judgment to all of the defendants on that claim. Because Whitt no longer has standing to pursue his abuse of process and civil conspiracy claims, I grant judgment for all of the defendants[2] on those claims. Whitt's FDCPA claims against all of the defendants based on allegedly illegal contractual collection fees and interest rates are time-barred. His claim that AcctCorp failed to provide a validation of debt letter under 15 U.S.C. § 1692g fails on the merits. Whitt is not permitted to add his garnishment claims at this stage, so I strike those from his amended complaint. Whitt's § 1692g claim against Bowen Law is his only remaining claim.

## I.     BACKGROUND

In 2011, Whitt entered into a contract with RCW for a line of credit to purchase home furnishings and related goods.[3] In 2014, RCW determined that Whitt was delinquent in his payment and had an account balance of $7,850.95.[4] RCW assigned the debt to AcctCorp for collection.[5] In July 2014, AcctCorp sent Whitt a validation of debt letter.[6] AcctCorp then retained Bowen Law Offices to help collect the debt.[7] On August 19, 2014, Bowen Law filed a lawsuit on AcctCorp's behalf in state court to collect the debt.[8] The complaint in the state action demanded payment of "the total sum of $11,776.43, including Contractual Collection Fees, plus Contractual Interest at the rate of 24.00%, from Date of First Delinquency, which is an amount equal to $123.89, plus Costs . . . ."[9] Whitt did not answer the complaint. Default was entered

---

[2] Although Bowen Law has not appeared in this action, many of the defects identified in AcctCorp and RCW's motion for summary judgment equally affect the claims against Bowen Law. So I include Bowen Law whenever I grant judgment on a claim for "all of the defendants." I will specify when judgment on a claim does not include Bowen Law.

[3] ECF No. 48-2.

[4] ECF No. 48-5 at 12.

[5] *Id.* at 11–12.

[6] ECF No. 48-10 (letter); 48-8 (debtor's history report indicating letter was mailed to Whitt).

[7] *See* ECF No. 48-11 (state court complaint).

[8] ECF No. 48-11.

[9] *Id.* at 3.

against Whitt on June 9, 2015.[10]  AcctCorp and Bowen Law then filed an application for default judgment, an amended application for default judgment, and a "prove-up request."[11]  On September 6, 2016, default judgment was entered for $19,093.42, which included the principal balance, contractual collection fees, interest, costs, and attorney's fees.[12]

In January 2017, Whitt filed this action against RCW, AcctCorp, and Bowen Law for violations of the FDCPA, the NDTPA, and for civil conspiracy and abuse of process.[13]  RCW moved to dismiss the complaint against it.[14]  I granted that motion, finding that (1) RCW was not a debt collector for the purposes of FDCPA liability, (2) RCW was not sufficiently involved in the state lawsuit to give rise to abuse of process liability, and (3) Whitt did not state a claim against RCW for civil conspiracy or NDPTA violations.[15]  I gave Whitt leave to amend only his NDPTA and civil conspiracy allegations against RCW.[16]

Whitt filed his amended complaint in October 2017.[17]  Despite not having leave to do so, he added an FDCPA allegation against AcctCorp and Bowen Law for garnishing his assets in violation of Nevada, Florida, and Utah law "as late as August 18, 2017."[18]  In October 2017, AcctCorp purchased Whitt's right of action to this case at a sheriff's sale.[19]  AcctCorp and RCW now move for summary judgment.[20]

---

[10] ECF No. 48-13 at 2 (state court docket).
[11] *Id.*
[12] ECF No. 48-15.
[13] ECF No. 1.
[14] ECF No. 10.
[15] ECF No. 25.
[16] *Id.*
[17] ECF No. 29.
[18] ECF No. 29 at 4.
[19] *See* ECF Nos. 48-17; 52-2; 52-3; and 52-4.
[20] ECF No. 48.

## II. DISCUSSION

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[21] A fact is material if it "might affect the outcome of the suit under the governing law."[22] An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[23]

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.[24] The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[25] I view the evidence and reasonable inferences in the light most favorable to the non-moving party.[26]

### A. NDPTA claims

AcctCorp argues that Whitt's NDTPA claims against it fail because Nevada Revised Statutes Chapter 598 does not apply to debt collection activities. RCW, who sold goods and services to Whitt, contends Whitt did not allege any facts giving rise to an NDPTA claim against it other than those involving the collection of the debt, which fail for the same reason the claims against AcctCorp fail. Whitt does not respond to these arguments, and therefore abandons the claims.[27] I grant judgment for AcctCorp and RCW on Whitt's NDTPA claims.[28]

---

[21] Fed. R. Civ. P. 56(a), (c).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[23] *Id.*

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[25] *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000).

[26] *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

[27] *See* ECF No. 52; *see also Long v. Pend Orielle Cty. Sheriff's Dep't*, 269 F. App'x 749, 751 (9th Cir. 2008) ("Appellants abandoned their . . . claim by failing to raise it in their opposition to summary judgment.") (citing *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).

[28] Whitt may have abandoned the claim after learning that courts in this district have repeatedly held that Chapter 598 does not apply to debt collection activities. *See e.g., Goldsmith v. Aaron Agency, Inc.*, 2:16-cv-02066-GMN-NJK, 2018 WL 1567848, at *7 (D. Nev. Mar. 30, 2018) (citing *Gage v. Cox Commc'ns, Inc.*, 2:16-cv-02708-KJD-GWF, 2017 WL 1536219 (D. Nev. Apr. 27, 2017); *Peatrowsky v. Persolve*, 2:12-cv-00935-JAD-VCF, 2014 WL 1215061 (D. Nev. Mar. 24, 2014)); *LaForge v. Richland Holdings*, 2:17-cv-00782-APG-VCF, 2018 WL 525298, at *8 (D. Nev. Jan. 23, 2018). *See also* Nev.

B. **Standing**

AcctCorp purchased Whitt's right of action to this case on October 18, 2017 at a sheriff's sale pursuant to a writ of execution issued by the Eighth Judicial District Court of Nevada.[29] AcctCorp then moved to substitute itself as the real party of interest in Whitt's stead.[30] As that motion was being briefed, the Ninth Circuit released its opinion in *Arellano v. Clark County Collection Services*,[31] which held that a debt collector cannot use Nevada law, which permits execution against a debtor's right of action, to purchase the debtor's right of action to FDCPA claims.[32] Magistrate Judge Koppe denied AcctCorp's request to substitute in based on *Arellano*.[33] In a footnote she also noted AcctCorp's request "that if the Court find *Arellano* applicable to the instant case, that in the alternative, its motion to substitute be granted as it pertains to [Whitt's] state law claims."[34] Judge Koppe denied that request without analysis.[35]

AcctCorp now contends that Whitt does not have standing to pursue his state law claims because AcctCorp purchased those claims under Nevada law. Whitt responds that *Arellano* and Judge Koppe's denial require I reject AcctCorp's position. Whitt also accuses AcctCorp of using "tactics and gamesmanship" to deprive him of his day in court, and argues that I should not allow such tactics.[36]

---

Attorney Gen. Adam Laxalt, Bureau of Consumer Protection, *What is deceptive trade?*, http://ag.nv.gov/About/Consumer_Protection/_Bureau_of_Consumer_Protection/, ("Examples of what is not deceptive trade include . . . debt collection . . . ."). Because Bowen Law has not appeared in this action and does not join the motion for summary judgment, this claim still remains against him. However, under the above-cited law it seems unlikely that Whitt will be able to obtain a judgment against Bowen Law based on the facts alleged in his amended complaint.

[29] *See* ECF Nos. 48-17; 52-2; 52-3; and 52-4.

[30] ECF No. 32.

[31] *Arellano v. Clark Cty. Collection Servs.*, 875 F.3d 1213 (9th Cir. 2017).

[32] *Id.* at 1218.

[33] ECF No. 43.

[34] *Id.* at 5 n.4.

[35] *Id.*

[36] ECF No. 52 at 18–19.

Nevada law permits judgment creditors to "obtain the issuance of a writ of execution for [a judgment's] enforcement."[37] Personal property subject to execution includes rights of action.[38] The Supreme Court of Nevada addressed the operation of this statutory scheme in *Butwinick v. Hapner*.[39] There, the plaintiff brought a lawsuit for breach of contract and the defendant counterclaimed for unjust enrichment and other tort-based claims.[40] The plaintiff won on its claims and the counterclaims and was awarded monetary damages.[41] The defendant appealed only the court's decision granting judgment on the plaintiffs' claims; it did not challenge the dismissal of the defendant's counterclaims.[42]

While the appeal was pending, the plaintiff obtained a writ of execution on the judgment and bought the defendant's rights and interests in that very action.[43] The plaintiff then moved to dismiss the appeal, arguing that the defendant no longer had a legally cognizable interest in appealing the case.[44] The court denied the motion because the appeal involved only the defendant's defenses to the plaintiff's claims, and a party's defenses to an action do not constitute a "thing in action" under the relevant statutes.[45] Because the appeal did not include the dismissal of the defendant's counterclaims, which are things in action, the court did not expressly rule that the purchase of those counterclaims was proper.[46]

---

[37] Nev. Rev. Stat. § 21.010.

[38] *Butwinick v. Hapner*, 291 P.3d 119, 121 (Nev. 2012); *see also* Nev. Rev. Stat. §§ 21.080, 10.045.

[39] *Butwinick*, 291 P.3d 119.

[40] *Id.* at 120.

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.* at 121.

[46] *Id.* at 122 ("Since appellants have waived any challenge to the denial or dismissal of their counterclaims . . . respondents' motion to substitute and dismiss is not proper . . . as granting the motion would serve only to foreclose appellants' defenses to respondents' underlying claims.").

Since then, however, the Supreme Court of Nevada has, in an unpublished order, dismissed an appeal after the winning defendant purchased the plaintiff's rights to the action being appealed because the plaintiff no longer owned an interest in pursuing the lawsuit.[47] In another unpublished disposition, the Supreme Court of Nevada held that an abuse of process claim pending before the trial court was properly subject to execution.[48] In short, the Supreme Court of Nevada has held that breach of contract, abuse of process, and other common law, tort-based claims are subject to writs of execution. Although these decisions are unpublished, they are indicative of the Supreme Court of Nevada's view on this area of the law.[49] So, under Nevada law, Whitt no longer owns an interest in his abuse of process or civil conspiracy claims.[50]

Contrary to Whitt's assertion, *Arellano* does not foreclose this result. *Arellano*'s holding was based on the finding that Nevada's statute allowing a judgment-creditor to purchase a judgment-debtor's FDCPA lawsuit against it was void under the Supremacy Clause because it directly conflicted with the FDCPA's purpose to "eliminate abusive debt collection practices . . . [and] protect vulnerable and unsophisticated debtors from abuse, harassment, and deceptive debt collection practices."[51] The Ninth Circuit made no ruling with respect to the law's effect on state common-law claims.

Judge Koppe's decision denying AcctCorp's motion to substitute itself as the real party in interest under Federal Rule of Civil Procedure (FRCP) 25 also has no effect on this ruling. A decision to substitute under FRCP 25 is discretionary and is evaluated under a standard unrelated

---

[47] *Antonio Nevada, LLC v. Rogich*, 2015 WL 3368808, at *1 (Nev. May 20, 2015) ("Because the appeal . . . arises from a dismissal of the action brought by the appellant, Rogich could purchase appellant's rights in that action, and by extension, the rights in that appeal.").

[48] *See Saucier v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 238 P.3d 852, at *1 (Nev. Nov. 14, 2018).

[49] In the absence of controlling state law, I must predict how the Supreme Court of Nevada would decide the issue. *See Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).

[50] Because Whitt abandons his NDTPA claims, I do not consider them in this standing analysis.

[51] *Id*.

to standing.[52] Despite that determination, "a well-founded prudential-standing limitation is that litigants cannot sue in federal court to enforce the rights of others."[53] A plaintiff's standing is contingent on the entitlement to enforce an asserted right. Whitt cannot show that he has any such entitlement now that AcctCorp owns his interest in his abuse of process and civil conspiracy claims.

Lastly, Whitt contends that I should not permit AcctCorp to use "tactics and gamesmanship" to avoid liability in this lawsuit. While I agree that this result is troubling, Nevada law permits this tactic. Whitt cites to no authority indicating that Nevada would decide this issue any differently or would find it against public policy to allow this result, and I cannot find any. AcctCorp has purchased Whitt's interest in the abuse of process and civil conspiracy claims, and therefore Whitt lacks standing because he no longer has a legally cognizable interest in those claims. No genuine disputes of material fact exist between the interested parties, so I grant judgment in favor of AcctCorp, RCW, and Bowen Law's on the abuse of process and civil conspiracy claims.

### C. *Rooker-Feldman Doctrine*

AcctCorp and RCW contend that all of Whitt's claims are barred by the *Rooker-Feldman* doctrine because they are a forbidden de facto appeal of the state court's entry of default judgment in the underlying collection action. Because none of Whitt's state law claims remain, I address this argument only as to his FDCPA claims.

The *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment."[54] "If a

---

[52] Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure: Civil § 1958 at 696-504 (3d ed. 2010) ("Since the matter [of substitution] is discretionary, the court also may refuse substitution if this seems the wisest course."); *see also McComb v. Row River Lumber Co.*, 177 F.2d 129, 129 (9th Cir. 1949) (noting that "under Rule 25(c) it is not mandatory that a substitution be made in every case of a transfer of interest").

[53] *RMA Ventures Cal. v. SunAmerica Life Ins. Co.*, 576 F.3d 1070, 1073 (10th Cir. 2009) (discussing import of FRCP 17 in relation to Utah's identical writ of execution statute and finding that plaintiffs lacked standing to pursue breach of contract lawsuit purchased by defendant).

[54] *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004) (citation omitted).

plaintiff brings a de facto appeal from a state court judgment, *Rooker-Feldman* requires that the district court dismiss the suit for lack of subject matter jurisdiction."[55]  The doctrine is "confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[56]  "[I]f a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction."[57]  "Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court."[58]

Whitt's claims are not a de facto appeal of the state court judgment.  Rather, Whitt complains of allegedly illegal conduct by the defendants to collect the debt by assessing unlawful collection and interest fees, failing to provide validation of debt letters, and unlawfully executing writs of execution and garnishment to collect the unlawful debt.  Whitt does not attribute any error to the state court.  He explicitly alleges that he does not seek to challenge or set aside the state court judgment, but rather seeks damages arising from the defendants' illicit conduct.[59]  Since Whitt's action is not a forbidden de facto appeal of the state court judgment, I retain jurisdiction over Whitt's FDCPA claims.

**D.  Statute of Limitation**

AcctCorp and RCW next argue that Whitt's FDCPA claims are time-barred.  FDCPA claims are subject to a one-year limitation period.[60]  Under the discovery rule applied by the Ninth Circuit to FDCPA claims, that limitation period "begins to run when the plaintiff knows or

---

[55] *Id.*

[56] *ExxonMobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

[57] *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (citing *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003)) (internal quotations omitted).

[58] *Id.* (emphasis in original) (citations omitted); *see also Kougasian*, 359 F.3d at 1140.

[59] *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003) ("Under *Rooker-Feldman*, we must pay close attention to the relief sought by the federal-court plaintiff.").

[60] 15 U.S.C. § 1692k(d).

has reason to know of the injury which is the basis of the action."[61]  If an FDCPA claim is time-barred on the face of the complaint, the plaintiff has the burden to show that he or she is entitled to the benefit of the discovery rule.[62]

AcctCorp filed the state-court collection action on August 19, 2014.[63]  The complaint was personally served on Whitt on September 29, 2014.[64]  AcctCorp filed an application for default judgment and an amended application for default judgment on June 10, 2015 and September 11, 2015, respectively.[65]  Both applications included an affidavit stating the principal balance of the debt and the amount of the contractual collection fee.[66]  They also included copies of Whitt's contract containing relevant choice-of-law provisions.[67]  Default judgment was entered for AcctCorp on September 6, 2016.[68]

AcctCorp argues that Whitt knew of his FDCPA claims when the state court complaint was served, or at the latest when the first application for default judgment, containing the contractual collection fee amount, was filed.[69]  Thus, he had until June 10, 2016 to file his lawsuit, but he missed the deadline by approximately six months.  Whitt appears to concede that his complaint is time-barred on its face, but contends that the discovery rule saves his claims.  Alternatively, he argues that the continuing violations doctrine should permit the limitations period to begin with the most recent alleged FDCPA violation and render all of his claims timely.

---

[61] *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009); *see also Lyons v. Michael & Assoc.*, 824 F.3d 1169, 1172 (9th Cir. 2016) (holding that the discovery rule applies to all FDCPA claims).

[62] *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (citing *Celotex Corp*, 477 U.S. at 323 and *Calif. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406–07 (9th Cir. 1995)).

[63] ECF No. 48-11.

[64] ECF No. 48-12.

[65] ECF Nos. 48-5; 48-14.

[66] *Id*.

[67] *Id*.

[68] ECF No. 48-15.

[69] ECF No. 48 at 20–21.

### 1. Discovery Rule

Whitt does not argue that he was unaware of the state court action or that he was not personally served with the summons and complaint. Rather, he claims that in December 2016, he sought assistance from a credit-repair agency, which referred him to counsel.[70] Whitt maintains that he could not discover the FDCPA violations on his own because the complaint does not itemize the debt to show that a 50% contractual collection fee was added. He also contends that "the [d]ocket in the state court case is confusing"[71] because AcctCorp and Bowen Law filed multiple documents related to the default judgment. Whitt relies only on his unverified complaint to support these allegations and presents no admissible evidence to bolster them. But even assuming Whitt presented evidence that could be properly considered at this summary judgment stage, his argument fails.

Under the discovery rule, claims arise when a plaintiff, exercising reasonable diligence,[72] knows or has reason to know of the injury that forms that basis of the action, not when he gains a legal understanding of his claims.[73] Whitt attempts to save his claims by asserting that he could not have learned about them without a lawyer, whom he retained years after he was served with the state-court complaint and months after he was subject to a default judgment. This argument is unavailing. Whitt had all he needed to reasonably discover his claims when the state-court action was commenced and he was personally served with a complaint containing the request for damages far exceeding his principal balance.

Whitt's contention that the exact amount of the contractual collection fee was not included in the state-court complaint, such that he could not have discovered its illegality, is also

---

[70] ECF No. 29 at 2.

[71] *Id.* at 4.

[72] *See Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010); *O'Connor*, 311 F.3d at 1147 ("[T]he discovery rule provides that a limitations period does not commence until a plaintiff discovers, or reasonably could have discovered, his claim.").

[73] *See Lekas v. United Airlines, Inc.*, 282 F.3d 296, 299–300 (4th Cir. 2002) (". . . in order for a claim to exist, the plaintiff must have some elemental knowledge of it. This does not mean, however, that a plaintiff must have complete knowledge of all elements or a legal understanding of the nature of the claim before his claim exists.") (citing *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).

unavailing. Whitt knew the principal balance of his debt, and therefore would have reason to know that it was significantly less than the $11,776.43 assessed in the complaint. Whitt's failure to investigate such an inconsistency does not allow him to revive otherwise time-barred claims once he chose to retain counsel.

Whitt's failure to carefully read the documents filed in the state court action also cannot be a basis for extending the statute of limitations. In June 2015, and again in September 2015, AcctCorp filed an affidavit breaking down its damages request and showing the exact amount of the principal balance, the contractual collection fee assessed, and other fees, and included a copy of Whitt's contract, which included the Utah choice-of-law provision.[74] At that time, if not earlier, Whitt had reason to know of the injuries that form the bases for the FDCPA claims relying on the contractual collection fees and interest rate allegations.

### 2. Continuing violations

Whitt also contends that he has unearthed more recent FDCPA violations that fall within the one-year limitation period, and that those violations constitute a continuing violation of the otherwise untimely FDCPA claims. Whitt argues that the application of the continuing violations doctrine begins the limitation period at the most recent FDCPA violation and all of his FDCPA violations are therefore timely. He contends that the defendants continuously violated the FDCPA by garnishing his wages and purchasing his interests in this action.[75]

The continuing violations doctrine can be used in limited circumstances to either toll the limitation period or introduce evidence of conduct that occurred before the limitation period to establish a pattern of actionable conduct.[76] The Ninth Circuit has not decided whether the

---

[74] *See* ECF Nos. 48-5; 48-14.

[75] Whitt first brought his garnishment allegations in his amended complaint without being granted leave to do so. He first mentioned AcctCorp's purchase of his right of action in his response to the summary judgment motion. Neither will be considered as claims in this lawsuit, and therefore cannot be used as a timely hook with which he reels in his untimely claims. But even if he were permitted to rely on those claims, his continuing violations argument fails for the reasons discussed here.

[76] *See Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996) ("Under the [continuing violations] theory, the statute of limitations does not begin to run until the last [violation] occurs.").

continuing violations theory applies to FDCPA claims, and district courts in this circuit are not uniform in their application of the doctrine. The courts that have considered the question generally analogize to the Supreme Court's guidance in applying the doctrine to Title VII cases involving hostile work environment claims.

Because hostile work environment claims by "their very nature involve[] repeated conduct," they are "different in kind" from discrete acts demonstrating Title VII discrimination.[77] The unlawful employment practice in a hostile work environment claim generally cannot be said to occur on any particular day. Rather, the cumulative effect of a series of individual acts over a period of time composes one hostile work environment claim. So the nature of the claim itself requires application of the continuing violations doctrine to ensure that a court can consider the entire time period that made up the hostile work environment to determine liability.[78] That reasoning does not apply to other Title VII actions that allege a violation stemming from one "discrete act" of discrimination or retaliation, like termination.[79]

The district courts in this circuit that apply the doctrine to FDCPA claims do so only when the plaintiff alleges a pattern of harassment in the attempt to collect a debt. The most common claim involves a debt collector calling a debtor an excessive number of times over an extended period.[80]

Outside of the pattern-of-harassing-phone-calls context, most district courts have found that FDCPA claims generally consist of discrete acts that constitute independent violations and therefore do not benefit from the continuing violations doctrine. For example, a district court in Hawaii recently ruled that allegations of forging an assignment of debt and later using that

---

[77] *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002).

[78] *See id.*

[79] *Id.* at 114.

[80] *See Joseph v. McIntyre Cos., LLC*, 281 F. Supp. 2d 1156, 1160 (N.D. Cal. 2003) (finding continuing violations doctrine applicable to FDCPA claim alleging harassment from over 200 phone calls to the plaintiff's home during a nineteen-month period, with no substantial period of cessation); *Dennett v. Portfolio Recovery Assocs., LLC*, 2013 WL 6320851, at *2 (C.D. Cal. Nov. 22, 2015) (applying doctrine to FDCPA harassment claim that "rest[s] on the volume and pattern of [harassing] calls, not on the substance of any discrete calls").

assignment to foreclose on the plaintiff's property were two discrete acts, and the timely foreclosure claim could not save the forgery claim under the continuing violations doctrine.[81] In Arizona, the district court held that a plaintiff's FDCPA claims alleging that a debt collector misrepresented the amount of his debt in letters, phone calls, emails, state court filings, and writs of execution did not constitute one continuing violation of the FDCPA.[82] While the court noted that the allegations were interrelated because they all involved misrepresentations, it found that they were not sufficiently linked to constitute one ongoing violation.[83] The majority of district court decisions in this circuit decline to apply the continuing violations doctrine in similar circumstances.[84]

Assuming the continuing violations doctrine could theoretically apply to the FDCPA, this is not one of the few cases where it would. Whitt alleges a number of discrete acts he believes violate the FDCPA, including (1) failing to provide validation of debt letters in violation of § 1692g, (2) filing a state court complaint to collect illegal contractual collection fees and interest rates, (3) obtaining default judgment including those unlawful fees and rates, and (4) illegally garnishing wages in violation of Florida, Nevada, and Utah law. While some of these acts are interrelated because they deal with the same allegedly unlawful collection fees and interest rates, they are not sufficiently linked to constitute one pattern of conduct giving rise to an FDCPA

---

[81] *Lowther v. U.S. Bank N.A.*, 971 F. Supp. 2d 989 (D. Haw. 2013).

[82] *McNair v. Maxwell & Morgan PC*, 142 F. Supp. 3d 859, 867 (D. Ariz. 2015) (*pending appeal*).

[83] *Id.*

[84] *See e.g., Prowell v. Cam Credits*, 2015 WL 2239309, at *3 (D. Or. May 12, 2015) ("[W]hen a plaintiff alleges a debt collector violated the FDCPA by misrepresenting the amount of the debt or attempting to collect a debt in excess of the amount actually owed, the statute of limitations begins to run when the plaintiff knows or reasonably should have known about the alleged misrepresentation or collection regardless of subsequent communications concerning the old claim."); *Susa v. Utah Loan Serv. LLC*, 2014 WL 173522 (S.D. Cal. Jan. 10, 2014) (finding six letters sent over a two-year period does not show pattern of conduct constituting a continuing violation); *Basich v. Patenaude's Felix, APC*, 2013 WL 1755484 (N.D. Cal. Apr. 24, 2013) (finding limited amount of contact between debtor and creditor not a continuing violation); *Camacho v. Nat'l Credit Adjustment Agency*, 2007 WL 760416, at *2 (E.D. Wash. Mar. 8, 2007) (finding five acts of mailing notice of dishonor, filing an action in state court, serving plaintiffs with state complaint, sending a collection letter, and calling plaintiff to demand payment were discrete acts, not a continuing FDCPA violation).

violation. Each act is alleged to have violated specific provisions of the FDCPA, occurred on different days, involved different conduct, and extended over multiple years. Any one of those acts could independently give rise to liability if it were timely brought. So I reject Whitt's continuing violations argument.[85]

The applicable statute of limitations bars all of Whitt's FDCPA claims except his contention that AcctCorp and Bowen Law failed to provide validation of debt letters under 15 U.S.C. § 1692g, because neither party directly discusses the application of the limitation period to those claims. Also, Whitt's new allegation that the defendants improperly garnished his wages in violation of the FDCPA in August 2017 (at the latest) appears not to be barred by the statute of limitations. So I move on to discuss those claims.

**E. Garnishment claims**

I previously granted Whitt leave to amend his civil conspiracy and NDTPA claims against RCW.[86] Instead, Whitt filed an amended complaint that added an FDCPA claim against Bowen Law and AcctCorp for allegedly garnishing his wages in a manner that violated Utah, Nevada, and Florida law.[87] In his response to the summary judgment motion, Whitt argues that AcctCorp and Bowen Law's garnishment practices violated §§ 1692f and 1692e(3), (4), and (9).[88]

---

[85] To the extent Whitt is arguing that the statute of limitations governing his allegations about the defendants' actions in state court did not begin to run until judgment was entered against him, the Ninth Circuit has explicitly rejected that argument. *See Naas v. Stolman*, 130 F.3d 892, 893 (9th Cir. 1997); *see also Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 131 (3d. Cir. 2009) (addressing whether ongoing debt collection litigation qualified as a continuing violation and citing *Naas*, stating "[i]ndeed, the only circuit court decision addressing this issue has concluded precisely the opposite").

[86] ECF No. 25.

[87] When I allowed Whitt to amend in this limited fashion, I denied his motion for leave to amend as moot. ECF No. 25. The proposed amended complaint he attached to that motion did not contain the garnishment claims he now alleges. *See* ECF No. 13-1.

[88] *See* ECF No. 52 at 9–10. In this response, Whitt's counsel argues that "Langsdale" and AcctCorp worked together to illegally pursue the garnishment actions. *Id.* But Langsdale is not a defendant in this action. It is unclear if Whitt's counsel intends to bring these claims against Bowen Law and AcctCorp, or if he erroneously copied and pasted the factual bases from a claim he is pursuing in one of the other lawsuits he is pursuing against Langsdale. *See e.g., Cox v. Richland Holdings*, 2:16-cv-02914-APG-VCF; *LaForge v. Richland Holdings*, 2:17-cv-00782-APG-VCF.

AcctCorp contends that Whitt was not given leave to add these claims and that he should not be granted leave to do so now.

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend his pleading only once as a matter of course within 21 days after serving it or after a responsive pleading or Rule 12(b), (e), or (f) motion is served. If that time-period lapses, a party may amend its pleading only with the opposing party's written consent or with the court's leave.[89] My previous dismissal order granted Whitt leave to amend to address only specified deficiencies. It did not give Whitt the opportunity to add new FDCPA allegations and claims never mentioned before the amended complaint was filed. The deadline to amend pleadings in this case expired in May 2017, and discovery closed on September 8, 2017.[90] Thus, Whitt now effectively seeks to amend the scheduling order.

Where a party seeks to amend a pleading after expiration of the scheduling order's deadline for amending the pleadings, the moving party first must satisfy the stringent "good cause" standard under Federal Rule of Civil Procedure 16.[91] This "good cause" standard centers on the moving party's diligence.[92]

I may modify the scheduling order if its deadlines "'cannot reasonably be met despite the diligence of the party seeking the extension.'"[93] The good cause standard typically will not be met where the party seeking to modify the scheduling order has been aware of the facts and theories supporting amendment since the inception of the action.[94]

---

[89] Fed. R. Civ. P. 15(a)(2).

[90] ECF Nos. 18, 24.

[91] *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 952 (9th Cir. 2006); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992).

[92] *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 609.

[93] *Johnson*, 975 F.2d at 609 (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 amendment)).

[94] *See United States v. Dang*, 488 F.3d 1135, 1142-43 (9th Cir. 2007); *Royal Ins. Co. of Am. v. S.W. Marine*, 194 F.3d 1009, 1016-17 (9th Cir. 1999) ("Late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.") (quotation omitted); *Chodos v. West Publ'g Co.*, 292 F.3d 992, 1003

Although Rule 16 does not require a showing of prejudice, I may consider whether prejudice would result to the party opposing amendment.[95] Prejudice has been found where the plaintiff moved to amend late in the proceedings, thereby requiring the defendant to go "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery."[96] Whether to modify the scheduling order's amendment deadline lies within my discretion.[97]

If the moving party is able to satisfy the good cause standard under Rule 16, then I examine whether the amendment is proper under Rule 15(a).[98] Under Rule 15(a)(2), I "should freely give leave when justice so requires."[99] I consider five factors to assess whether to grant leave to amend under Rule 15(a): (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended the complaint.[100] Whether to grant leave to amend under Rule 15 lies within my discretion.[101]

Whitt has not been diligent in seeking to amend his complaint to add new claims when he discovered them. Whitt has known about AcctCorp's garnishment of his wages since at least September 2016, before this lawsuit was filed.[102] Instead of bringing those claims in his original complaint, Whitt waited five months after the amendment deadline passed and one month after

---

(9th Cir. 2002) (affirming the district court's denial of leave to amend where the plaintiff sought to add a claim based on facts that were available to the plaintiff before he amended his complaint).

[95] *Coleman*, 232 F.3d at 1295.

[96] *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989) (quotation omitted); *see also MV Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983) (denial of motion to amend upheld where new allegations would "totally alter the basis of the action" and necessitate additional discovery).

[97] *Dang*, 488 F.3d at 1142-43.

[98] *Johnson*, 975 F.2d at 608.

[99] *See also Foman v. Davis*, 371 U.S. 178. 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").

[100] *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F. 3d 1109, 1117 (9th Cir. 2013).

[101] *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

[102] *See* ECF No. 52-7 (writ of execution dated 09/06/2016, and payroll department letter to Whitt giving notice that it received an income withholding order in this case, dated 10/12/2016).

discovery closed to try to add the claims. Allowing Whitt to add these claims would also prejudice the defendants, as it would likely necessitate re-opening discovery. I will not grant leave to amend the scheduling order. So I strike the garnishment allegations and claims from Whitt's amended complaint and do not consider them.

**F. Section 1692g claims**

Whitt alleges that Bowen Law and AcctCorp failed to provide validation of debt letters that are required by 15 U.S.C. § 1692g. AcctCorp presents evidence that it sent the letter on July 15, 2014.[103] Whitt's argument hinges on the contention that AcctCorp did not provide the letter at all. He does not allege, argue, or present evidence demonstrating that the letter failed to provide the information required by § 1692g. So I grant judgment in AcctCorp's favor on this claim.

However, Whitt also brings this § 1692g claim against Bowen Law. That claim still remains for now, subject to an order to show cause that will be issued separately.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants AcctCorp and RCW's motion summary judgment **(ECF No. 48) is GRANTED**.

DATED this 27th day of April, 2018.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[103] ECF Nos. 48-10 (validation of debt letter); 48-8 (debtor's history report indicating letter was mailed to Whitt); *see Mahon v. Credit Bureau of Place Cty. Inc.*, 171 F.3d 1197, 1201–02 (9th Cir. 1999) ("[S]ection 1692g(a) requires only that a Notice be 'sent by a debt collector.' A debt collector need not establish actual receipt by the debtor.").